IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

ANTHONY MICHAEL OLLER,     )
                         )
         Petitioner,      )
                         )
                         )     CIV-15-1076-W
v.                       )
                         )
JASON BRYANT, Warden,       )
                         )
         Respondent.     )

REPORT  AND  RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Petitioner is challenging his plea-based convictions for Manslaughter in the First Degree, Leaving the Scene of a Fatality Accident, and Driving with License Revoked, Subsequent Offense, all after two prior felony convictions, entered in the District Court of Garfield County, Case No. CF-2013-44.  With his Petition, Petitioner has filed a Motion for Evidentiary Hearing on Sixth Amendment Claims.

Respondent has responded to the Petition and filed the relevant state court records, including the transcripts of Petitioner's plea proceeding ("Plea TR__"), first and second plea withdrawal proceedings ("First Plea Withdrawal TR__")("Second Plea Withdrawal TR_"), and the original record ("OR __"). Petitioner has replied to the Response.  The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28

U.S.C. § 636(b)(1)(B).  For the following reasons, it is recommended that the Petition be denied.

I. Background

Petitioner was charged in an information filed in the District Court of Garfield County, Oklahoma, on January 29, 2013, Case No. CF-2013-44, with three offenses: Manslaughter in the First Degree for causing the death of Mary Beth Ward while unlawfully engaged in a misdemeanor, Driving with License Revoked, Subsequent Offense; Leaving the Scene of Fatality Accident; and Driving with License Revoked, Subsequent Offense. Petitioner was charged with having committed these offenses after two prior felony convictions.

In an affidavit of probable cause filed in the case on the same date, an Enid police officer averred, *inter alia*, that a witness described seeing a tan Chevrolet extended cab pick-up truck hit a female standing on the side of the road, seeing the female "f[ly] up into the air, landing in front of the truck," and seeing "the truck [run] over the female, turn[ ] east, and [leave] the scene." OR 4.

The officer averred that while investigating the incident Petitioner's father, Mr. Steve Oller, came to the scene and advised the officer that Petitioner was driving the truck involved in the incident.  Mr. Oller also advised the officer that Petitioner had been drinking alcohol before the incident and that Petitioner told Mr. Oller he had looked down and "suddenly hit something." Id. The officer further averred that Mr. Oller stated Petitioner had "assumed that he hit a person due to the damage being so high on the vehicle" and that Petitioner had asked

his father to take the damaged vehicle to the scene and tell the investigating officer that he, Mr. Oller, and not Petitioner, "hit the girl" or hit a dog. Id. The victim died from her injuries. The officer averred Petitioner had a suspended driver's license at the time of the incident.

The officer stated he went to the location where Mr. Oller said he had left Petitioner's truck, and the officer noted the truck, a silver Chevrolet extended cab pick-up truck, "had heavy front end damage and [it] appeared the primary impact took place in the middle of the front of the vehicle." Id. The officer further stated that during an initial interview Petitioner stated that his father, Mr. Oller, was driving the truck and "hit a dog." OR 5.

On January 29, 2013, two applications were filed in the District Court of Garfield County to revoke Petitioner's suspended sentence for his previous conviction of possession of controlled substance entered in Case No. CF-2008-465 and his suspended sentence for his previous conviction of endeavoring to possess a controlled substance entered in Case No. CF-2007-321. http://www.oscn.net (docket sheets in Case No. CF-2008-465 and Case No. CF-2007-321, District Court of Garfield County, Oklahoma, last accessed December 16, 2015).

On March 8, 2013, an amended information was filed in Case No. CF-2013-44 in which the manslaughter charge was amended to charge that Petitioner committed the offense while unlawfully engaged in driving under the influence of alcohol and/or driving with license revoked, subsequent offense. Petitioner retained counsel and waived his right to a preliminary hearing. OR 48.

A hearing on the applications to revoke in Case Nos. CF-2008-465 and CF-2007-321 was held in the district court on May 6, 2013. Several witnesses testified at this hearing, including Petitioner's mother and father. At the conclusion of the hearing, the court revoked Petitioner's suspended sentences in both cases. http://www.oscn.net (docket sheets in Case No. CF-2008-465 and Case No. CF-2007-321, District Court of Garfield County, Oklahoma, last accessed December 16, 2015).

On October 25, 2013, three days before Petitioner was scheduled to appear for a jury trial in Case No. CF-2013-44, Petitioner appeared in the district court with his defense attorney and entered a plea of guilty to the charges of Manslaughter in the First Degree, Leaving the Scene of a Fatality Accident, and Driving with License Revoked, Subsequent Offense, all after two prior felony convictions.

A written Plea of Guilty Summary of Facts signed by Petitioner and filed in the case demonstrates that before entering his plea Petitioner was advised of the rights he was waiving by entering the plea and the consequences of the plea, including the range of punishment for the habitual offender charges.

In the plea proceeding, Petitioner "stipulate[d]" to the facts presented in the probable cause affidavit filed in the case. Response, Ex. 1 (Plea of Guilty Summary of Facts filed on October 25, 2013, in State v. Oller, Case No. CF-2013-44), at 5. In open court, Petitioner stated under oath that his attorney had answered any and all questions he had about the Plea of Guilty Summary of Facts, that before he signed the form he understood each of the questions on the form, and he made sure that each of his answers on the form was true and

correct. Plea TR 3-4. Petitioner further stated under oath that he was pleading guilty because he was guilty of each of the offenses and that he agreed the probable cause affidavit set forth sufficient facts to meet the elements of each crime alleged. Id. at 4-5. Petitioner entered the guilty plea without a sentencing agreement. The trial court accepted Petitioner's guilty plea. At Petitioner's request, the trial court requested a presentence investigation report and scheduled the case for sentencing following completion of the report.

Prior to the date of his sentencing, Petitioner moved to withdraw his guilty plea. Id., Ex. 2 (Defendant's Motion to Withdraw Plea of Guilty filed on January 6, 2014, in State v. Oller, Case No. CF-2013-44). In his motion, Petitioner alleged several grounds in support of the application to withdraw his plea, including undue coercion by his defense attorney, inadequate advice concerning the range of punishment for the charges, and his factual innocence of the charges. The trial court allowed Petitioner's defense counsel to withdraw and appointed new counsel to represent him.

At a hearing on the motion to withdraw, Petitioner appeared with his new counsel and testified that at the time of the plea proceeding he believed he was eligible for a split sentence or probation. First Plea Withdrawal TR 5. He admitted he understood there was no plea agreement in the case and that he got the idea he would be eligible for a split sentence or probation from "several people [he] talked to . . . in jail." Id. at 20. He could not remember whether he discussed this information with his defense attorney. Petitioner also testified that he felt his previous defense attorney was proceeding to trial "with hesitation" because the attorney did not feel Petitioner had "paid him enough money." Id. at 22.

Petitioner's former defense attorney, Mr. Corey, testified that Petitioner "was aware that he was not eligible for any probation in this case." Mr. Corey also testified he had discussed with Petitioner the meaning of a "blind plea" and advised Petitioner that "the judge could not give him anything less than what was called for in the information, which was, on the manslaughter [charge], 20 years." Id. Mr. Corey testified that he advised Petitioner he would not be sentenced to "a split sentence because the judge was without authority to do that." Id. at 35. Mr. Corey testified he had expressed reluctance to proceed to trial based on his "fear that [his] client would die in prison." Id.

Mr. Corey further testified that Petitioner's mother had asked Petitioner in a letter to "just plead and get it over with and quit tormenting the rest of the family" and that Petitioner "decided, after reading that letter and after speaking with [the attorney] that he would enter a plea of guilty, and that's what he did." Id. at 36. At the end of the hearing, the trial court denied the motion to withdraw.

In the presentence investigation report filed in the case, a probation officer provided Petitioner's version of the offenses. In this version, Petitioner stated that his brother, Dustin, was driving Petitioner's truck and hit the victim. OR 148. Petitioner stated that he agreed with Dustin to "take the blame" for the offenses, although Petitioner stated he later attempted to have his father "take the blame" because his father had a valid driver's license. Id. Because Petitioner had "shown no remorse for his actions" and was only concerned with "his own self-interest," the probation officer recommended that Petitioner serve a sentence of life imprisonment. At the request of the victim's family, the officer also requested that the court

order Petitioner to pay restitution in the amount of $7,500.00 to the Victim's Compensation Fund, which was the amount provided to the family from the Fund for the victim's funeral expenses.

Petitioner was sentenced in Case No. CF-2013-44 on April 28, 2014, to life imprisonment for the manslaughter conviction, a 10-year term of imprisonment for the second count, Leaving the Scene of a Fatality Accident, and a one-year term of imprisonment in the county jail for the third count, Driving with License Revoked, Subsequent Offense, with all sentences running concurrently with each other and consecutive to the revoked sentence in Case No. CF-2008-465. OR 170. Petitioner was ordered to pay restitution in the amount of $7,500.00. OR 170, 173.

Following his sentencing, Petitioner filed a second Motion to Withdraw Guilty Plea on April 29, 2014. In this motion, Petitioner alleged that his "plea was entered improvidently through ignorance and [he] believes he has a viable defense to the charges." Response, Ex. 3. In a hearing on the motion conducted on May 22, 2014, Petitioner appeared with counsel and testified that he thought he was eligible for "some probation" and would not have pled guilty if he knew he was not eligible for probation. Second Plea Withdrawal TR 4. Petitioner also testified that he entered a guilty plea because "my parents had been threatened" that "if I didn't sign a blind plea, that the D.A. was going to go ahead and arrest my parents for conspiracy to commit perjury. And I received letters from my parents five minutes before we went through the . . . paperwork [and] I was under duress and . . . wasn't thinking straight. I was thinking more of my parents . . . than myself." Id. at 4-5. But

Petitioner also admitted that he had asked his parents to lie for him at trial and that lying is perjury.

Mr. Corey testified that prior to the plea proceeding he had discussed with Petitioner in the courtroom "a stack of letters" Petitioner had written to his parents encouraging them to change their testimony from their previous testimony in the "application [to revoke] hearing" and that the prosecutor could charge his parents with perjury if they testified at Petitioner's trial and altered their previous in-court testimony. Id. at 13. Mr. Corey testified that after this discussion and also in light of a letter Petitioner received from his mother encouraging him to enter a plea, Petitioner decided to enter a guilty plea. Id. At the conclusion of this hearing, the motion was denied.

Petitioner sought a certiorari appeal from the convictions and sentences. In his first proposition, Petitioner asserted that the trial court abused its discretion and denied Petitioner due process by denying Petitioner's motion to withdraw his guilty plea because there was an insufficient factual basis supporting the plea. In his second proposition, Petitioner asserted that his plea was not voluntarily and knowingly entered "as it relates to the imposition of restitution and/or a victim's compensation assessment." Response, Ex. 4, at 16. In his third proposition, Petitioner asserted that the trial court abused its discretion in denying his first motion to withdraw his guilty plea where the court had not entered judgment.

In his fourth proposition, Petitioner asserted that his plea was not voluntarily and knowingly entered because he entered a plea to "protect his loved ones from prosecution" and because he was coerced by the prosecutor who threatened Petitioner and/or his parents

with prosecution for alleged perjury. Id. at 29. In his fifth proposition, Petitioner contends that he was denied effective assistance of counsel during the guilty plea and motion to withdraw proceedings.

With his appellate brief, Petitioner filed an Application for Evidentiary Hearing on Sixth Amendment Claims. Response, Ex. 5. In this application, Petitioner sought an evidentiary hearing concerning his claim that he was denied effective assistance of counsel during the plea and plea withdrawal proceedings.

In a summary opinion, the Oklahoma Court of Criminal Appeals ("OCCA") denied relief on each of Petitioner's claims and denied his request for a hearing. With respect to Petitioner's first proposition, the OCCA found that Petitioner had waived review of the merits of this claim because he had not challenged the factual basis for the plea in the district court. Reviewing the claim under the court's plain error standard, the court found that no plain error occurred where the record showed Petitioner "stipulated to the accuracy of the allegations made in the Probable Cause Affidavit on which the charges were predicated."

The OCCA found that Petitioner had also waived review of the merits of his second proposition because he had failed to challenge the district court's imposition of restitution in the district court. The court found "no error, plain or otherwise, in these assessments." Response, Ex. 6, at 3.

Regarding Petitioner's third proposition, the court found that the district court did not abuse its discretion in denying Petitioner's motions to withdraw his plea "[c]onsidering Petitioner's claims and the testimony taken at the hearings," where the "trial court entertained

Petitioner's request to withdraw his pleas not just once, but twice - once before sentencing, and again after sentencing," and where the "court promptly and properly appointed new counsel after Petitioner expressed a conflict with his original counsel on the plea." Id.

Considering Petitioner's fourth proposition of an involuntary plea, the court rejected the claim, finding that Petitioner had "claimed below that he was pressured into pleading guilty by his attorney's reluctance to go to trial, and by the prosecutor's threats to file additional perjury-related charges against Petitioner and/or his parents if he went to trial," that the district "court received testimony on these issues, including Petitioner's admission that he asked his parents to testify, at trial, inconsistently with their prior testimony (i.e., to commit perjury)," that "[a]ny warning the prosecutor might have communicated on this subject appears to have been well-founded, and Petitioner's plea appears to have been a reasonable strategic choice among his alternatives." Id. at 4.

Concerning Petitioner's fifth proposition alleging ineffective assistance of counsel, the OCCA found that Petitioner was alleging ineffective assistance of "both his retained counsel and conflict counsel appointed after Petitioner moved to withdraw his pleas," that Petitioner had requested an evidentiary hearing on his Sixth Amendment claims, and that the documents Petitioner provided with his application for an evidentiary hearing did not show "a strong possibility" of deficient performance by either of his attorneys. Id.

In the instant Petition, Petitioner raises the same five grounds for relief that he asserted

in his certiorari appeal.[1]

II. <u>Standard of Review of Constitutional Claims</u>

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court cannot grant habeas relief with respect to a claim of a constitutional deprivation raised by a state prisoner that was adjudicated on its merits in state court proceedings unless the (1) state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The AEDPA directs courts to "ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." <u>Williams v. Taylor</u>, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)).

A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. <u>Id.</u> at 405-406, 413. A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005); <u>Williams</u>, 529 U.S. at 407. <u>See</u> <u>Price v. Vincent</u>, 538 U.S. 634, 640-641 (2003).

_____

[1]Petitioner states in his Petition that he has sought post-conviction relief concerning his convictions and sentences in Case No. CF-2013-44 but that he has intentionally raised herein only those issues he presented in his certiorari appeal.

"[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson, 542 U.S. 649, 652 2004)(*per curiam*)(citations omitted). See Cullen v. Pinholster, 563 U.S. 170 (2011)(federal habeas "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"). Further, state-court findings of fact are presumed correct under the AEDPA and entitled to deference. 28 U.S.C. § 2254(e)(1).

III. Knowing and Voluntary Nature of Guilty Plea

In his first four grounds for habeas relief, Petitioner has alleged, for various reasons, that his guilty plea was not knowingly and voluntarily entered. "The Due Process Clause of the Fourteenth Amendment requires that a defendant knowingly and voluntarily enter a plea of guilty." Fields v. Gibson, 277 F.3d 1203, 1212-1213 (10th Cir. 2002). Consistent with due process guarantees, a valid plea is one entered with a "full understanding of what the plea connotes and of its consequence[s]." Boykin v. Alabama, 395 U.S. 238, 244 (1969). See Brady v. Maryland, 397 U.S. 742, 755 (1970)(a defendant must be "fully aware of the direct consequences" of the plea). Further, although a petitioner's statements made at the guilty plea hearing "are subject to challenge under appropriate circumstances," those statements constitute "a formidable barrier in any subsequent collateral proceeding." United States v. Maranzino, 860 F.2d 981, 985 (10th Cir. 1988)(quoting Blackledge v. Allizon, 431 U.S. 63, 74 (1977)).

It is not necessary that the record reflect a detailed enumeration and waiver of rights as a result of the guilty plea; rather the issue is simply whether the record affirmatively shows

that the guilty plea was intelligent and voluntary. <u>Stinson v. Turner</u>, 473 F.2d 913 (10th Cir. 1973). "Whether a plea is voluntary is a question of federal law, but this legal conclusion rests on factual findings and inferences from those findings." <u>Fields v. Gibson</u>, 277 F.3d 1203, 1212 (10th Cir. 2002) (citing <u>Boykin</u> ). The determinations of factual issues made by a state court are presumed to be correct, and the applicant can rebut this presumption only with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A. <u>Factual Basis for Plea</u>

Petitioner first contends that his guilty plea was invalid because the district court did not elicit a sufficient factual basis for the plea. "[U]nless a defendant claims factual innocence while pleading guilty, there is no federal constitutional requirement for the [state] district court to ascertain a factual basis for the plea." <u>Perkis v. Sirmons</u>, 201 F. App'x. 648, 650 (10th Cir. 2006)(unpublished op.)(citing <u>Berget v. Gibson</u>, 1999 WL 586986 (10th Cir. Aug. 5, 1999)(unpublished op.), and <u>Freeman v. Page</u>, 443 F.2d 493, 497 (10th Cir. 1971)); <u>see also</u> <u>Sena v. Romero</u>, 617 F.2d 579, 581 (10th Cir. 1980). Petitioner did not claim factual innocence when he pled guilty to the charges, a claim that might require an inquiry into the factual basis for his plea. <u>See</u> <u>North Carolina v. Alford</u>, 400 U.S. 25, 38 n. 10 (1970). Instead, Petitioner admitted in open court that the factual allegations set forth in the probable cause affidavit were correct, and Petitioner admitted his guilt as charged in each count.

Petitioner's claim that his plea was not supported by a sufficient factual basis is simply not cognizable in this habeas action. <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993) ("federal habeas courts act in their historic capacity to assure that the habeas petitioner is not

being held in violation of his or her federal constitutional rights"); Estelle v. McGuire, 502 U.S. 62, 67 (1991)("federal habeas corpus relief does not lie for errors of state law"). Accordingly, Petitioner is not entitled to federal habeas relief as to this claim. See 28 U.S.C. § 2254(d)(1).

B. Restitution

In his second proposition, Petitioner has asserted only an issue of state law. He contends that the trial court failed to make proper findings required under Oklahoma law before assessing an amount of restitution as part of his sentence. The OCCA addressed this same claim in Petitioner's certiorari appeal. Applying plain error review and relying solely on state law, the OCCA found no error occurred in the restitution assessment.

The OCCA's plain error analysis, which is used to review an issue that has been procedurally waived in the state district court, "is rooted in due process" and holds "no practical distinction" from "the federal due-process test, which requires reversal when error 'so infused the trial with unfairness as to deny due process of law.'" Thornburg v. Mullin, 422 F.3d 1113, 1125 (10th Cir. 2005) (quoting Estelle, 502 U.S. at 75). "Because the OCCA applied the same test [that federal courts] apply to determine whether there has been a due-process violation, [a federal court] must defer to its ruling unless it 'unreasonably appli[ed]' that test." Id. (quoting 28 U.S.C. § 2254(d)(1)); see also Hancock v. Trammell, 798 F.3d 1002, 1011-12 (10th Cir. 2015) (discussing OCCA's plain error standard). Petitioner has not shown that the OCCA unreasonably applied its plain error test.

With respect to Petitioner's claim that the district court did not comply with state law

14

in imposing a restitution award, this Court lacks jurisdiction to consider the merits of this claim. See 28 U.S.C. § 2254(a) (granting federal courts jurisdiction over an application for habeas "of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"); Rosales v. Milyard, 541 Fed. App'x. 874, 880 (10th Cir. 2013)(unpublished op.)(holding federal courts lack subject matter jurisdiction under 28 U.S.C. § 2254(a) to consider habeas petitioner's challenge to trial court's imposition of restitution).

C. Right to Withdraw Plea

In his third ground for habeas relief, Petitioner contends that he had the right to withdraw his plea because judgment had not yet been entered when he filed his first motion to withdraw the plea. Although Petitioner refers to due process guarantees in asserting this claim, the claim is based solely on state law and is therefore not cognizable in this federal habeas proceeding.

"[T]he withdrawal of a guilty plea before sentencing is not a matter of right, but a matter of discretion . . . ." United States v. Vidakovich, 911 F.2d 435, 439 (10th Cir. 1990). "Although a criminal defendant does not have an absolute right to withdraw a plea of guilty, a request to withdraw such a plea made before imposition of sentence should be considered carefully and with liberality." United States v. Hancock, 607 F.2d 337 (10th Cir. 1979).

As the OCCA found in rejecting this claim in Petitioner's certiorari appeal,

> the trial court entertained Petitioner's request to withdraw his pleas not just once, but twice - - once before sentencing, and again after sentencing. The court promptly and properly appointed new counsel after Petitioner expressed a conflict with

> his original counsel on the plea. Considering Petitioner's claims
> and the testimony taken at the hearings, we cannot say that the
> trial court abused its discretion in denying Petitioner's request.

Response, Ex. 6, at 3-4. Petitioner has not pointed to any Supreme Court authority that allows him an unlimited right to withdraw his guilty plea. The trial court provided Petitioner two opportunities, with new counsel, to present his requests to withdraw his plea and carefully considered the evidence presented in the plea withdrawal proceedings in denying his requests. Petitioner has not demonstrated that the OCCA's rejection of this claim was contrary to or unreasonably applied controlling Supreme Court jurisprudence.

D. Coercion

In his fourth ground, Petitioner contends that his guilty plea was not voluntarily entered because he was "pressured" by his defense attorney and the prosecutor to enter the plea. At Petitioner's first plea withdrawal hearing, Petitioner testified that he had believed, from information he obtained from unknown individuals while in jail, that he would be eligible for probation for at least a portion of his sentence. At his second plea withdrawal hearing, Petitioner testified that he thought he would be eligible for "some probation" when he agreed to enter the plea. Second plea withdrawal TR 4.

At his second plea withdrawal hearing, Petitioner also presented a new reason for requesting to withdraw his plea. Petitioner testified that the prosecutor had threatened to arrest his parents for conspiracy to commit perjury. Id. at 4-5. Petitioner testified that his attorney had "circled no that nobody had threatened me to . . . make my decision, you know." Id. at 6. He testified he felt that he was forced to enter a plea.

On cross-examination, Petitioner stated he "should have said I was under duress that day. I didn't." Id. at 8. Petitioner also admitted on cross-examination that he had written letters asking his parents to lie for him at his trial. Id. at 9. Mr. Corey, Petitioner's defense attorney at the time of the plea, testified that during discussions with Petitioner concerning his upcoming trial Petitioner's mother had written him a letter suggesting that Petitioner "tak[e] the plea and get[ ] his time done and get[ ] home as soon as possible." Id. at 13.

Mr. Corey further testified that he was aware Petitioner had written "a stack of letters" to his parents "encouraging them to alter their testimonies or to make their testimonies coincide with each other" in a manner that was inconsistent with "their prior testimony at an application [to revoke] hearing in front of this Court" and he advised Petitioner that the prosecutor "could charge his parents with perjury if they got up there and lied or changed their testimony from the previously sworn testimony that they gave, and that . . . those letters supported a perjury charge." Id. The former attorney testified he advised Petitioner "[t]hat would be bad for his parents and bad for his case as well" and that Petitioner thereafter decided he would enter a guilty plea. Id.

The OCCA rejected Petitioner's claim of a coerced plea, finding that, in light of Petitioner's admission that he had asked his parents to testify at trial inconsistently with their prior testimony and commit perjury, "[a]ny warning the prosecutor might have communicated on this subject appears to have been well-founded, and Petitioner's plea appears to have been a reasonable strategic choice among the alternatives." Response, Ex. 6, at 4.

Petitioner presents no "clear and convincing evidence," as required by the AEDPA, to rebut the presumption of correctness attached to the OCCA's factual findings concerning his allegations of coercion by the prosecutor and/or his counsel. Petitioner relies here, as he did before the OCCA, upon his own testimony at the plea withdrawal hearings. The OCCA's findings that the plea was entered voluntarily and knowingly are well supported by the transcript of the plea colloquy, Petitioner's sworn statements on the Plea of Guilty Summary of Facts form, and Mr. Corey's testimony at the plea withdrawal hearings concerning the circumstances surrounding the plea. In light of this record, Petitioner's conclusory allegations of coercion are "wholly incredible." See Blackledge, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). It was not coercion for Petitioner's defense counsel to present him with the "brutal facts" of the case, which provided strong evidence of Petitioner's guilt, and advise him to enter a guilty plea. See Nicholls v. Bigelow, 558 Fed. App'x. 778, 786 (10th Cir. 2014)(unpublished op.)(holding that "presenting the brutal facts to a client is the job of counsel; it is not coercion" and strongly urging a client to plead guilty "is proper conduct by an attorney if he believes that a plea is the best course").

Petitioner also presents no argument that the OCCA's decision was contrary to or involved an unreasonable application of clearly established federal law. Because the record firmly shows that Petitioner's guilty plea was voluntarily and knowingly entered with a full

understanding of the consequences of the plea, Petitioner has not established that the OCCA unreasonably applied the prevailing <u>Boykin</u> standard. Petitioner is therefore not entitled to habeas relief concerning his claim in grounds one through four of the Petition.

III. <u>Ineffective Assistance of Counsel</u>

In his fifth and final ground for habeas relief, Petitioner contends that he was denied effective assistance of counsel in his plea and plea withdrawal proceedings. When a defendant enters a guilty plea on the advice of counsel, the defendant may attack the voluntariness of the plea by showing ineffective assistance of counsel. <u>Hill v. Lockhart</u>, 474 U.S. 52, 56–57 (1985).

To prevail on a claim of ineffective assistance of counsel, the Petitioner must show both that (1) his counsel's performance was deficient, such that identified acts and omissions were outside the wide range of professionally competent assistance, and (2) he was prejudiced by the deficient performance to such an extent that there is a reasonable probability that but for counsel's unprofessional errors the result would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." <u>Harrington v. Richter</u>, 562 U.S. 86, 104 (2011) (quoting <u>Strickland</u>, 466 U.S. at 689). "With respect to prejudice, . . . '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.' " <u>Id.</u> (quoting <u>Strickland</u>, 466 U.S. at 694). "The likelihood of a different result must be substantial, not just conceivable."

*Strickland*, 466 U.S. at 693. A habeas petitioner who alleges that he received ineffective assistance of counsel in connection with his entry of a guilty plea must demonstrate that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58–60.

"Surmounting *Strickland*'s high bar is never an easy task." *Richter*, 562 U.S. at 105 (quotation omitted). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." Id. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." Id.

In his certiorari appeal, Petitioner asserted that Mr. Corey provided ineffective assistance in connection with his guilty plea because Mr. Corey did not "ensure that the factual basis was sufficient," he delayed filing Petitioner's first request to withdraw his plea, he was hesitant to proceed to trial, and he pressured and coerced Petitioner to enter a blind plea. Response, Ex. 4, at 33-38.

The OCCA rejected Petitioner's claim of ineffective assistance of counsel. The OCCA found that Petitioner's arguments and the documents he presented with his application for an evidentiary hearing on the Sixth Amendment issue did not demonstrate his defense attorney provided deficient performance.

While an attorney's actions can render a defendant's plea involuntary, "one central component of a lawyer's job is to assimilate and synthesize information from numerous sources and then advise clients about what is perceived to be in their best interests." *Fields*

20

v. Gibson, 277 F.3d 1203, 1214 (10th Cir. 2002). Therefore, "'advice - even strong urging by counsel does not invalidate a guilty plea.'" Id. (quoting Williams v. Chrans, 945 F.2d 926, 933 (7th Cir. 1991) (internal quotation marks and citation omitted)).

Viewing Mr. Corey's "challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Strickland, 466 U.S. at 690, as the Court must do, Petitioner has not demonstrated that the OCCA's decision was contrary to or unreasonably applied the controlling Strickland/Hill standard.

It is not deficient performance or coercion to ascertain and consider the evidence that presumably would be presented at a trial and advise a client to enter a guilty plea. See Nicholls, 558 Fed. App'x. at 786 (holding that defense counsel's strong urging that a client plead guilty is "proper conduct by an attorney if he believes that a plea is the best course"). In this case, the stipulated facts in the probable cause affidavit reveal that Petitioner had admitted to his father he was the driver of the truck that hit the victim. Petitioner's truck showed severe damage to its front end. Even though it was nighttime, an eyewitness described seeing the victim hit by the front end of an extended cab truck similar to Petitioner's truck and saw the truck run over the victim and leave the scene.

The probable cause affidavit also included the stipulated facts that Petitioner had attempted to lie to investigating officers concerning his culpability. Furthermore, the transcript of the plea colloquy and Petitioner's sworn statements on the written Plea of Guilty Summary of Facts form demonstrate that Petitioner understood the charges and his trial rights, firmly and clearly admitted he was guilty of the charges, understood the range of

punishment, and firmly stated under oath that he had not been coerced, promised anything, or threatened in exchange for his plea.

Mr. Corey testified he advised Petitioner to enter a guilty plea based on his considered evaluation of the evidence that could be presented against Petitioner at a trial, and the stipulated facts in the probable cause affidavit, as well as Petitioner's own testimony that he encouraged his parents to lie under oath at his trial, showed that the advice his defense attorney gave him to enter a blind plea was not deficient performance. Petitioner's conclusory allegations that he was coerced to enter the plea are "wholly incredible" in light of the record, and Petitioner has failed to demonstrate his former defense attorney provided deficient performance in connection with Petitioner's guilty plea.

Under these circumstances, the Court need not address the second prong of the Strickland standard. See Strickland, 466 U.S. at 700 (if habeas petitioner is unable to show either "deficient performance" or "sufficient prejudice," his claim of ineffective assistance fails). Petitioner has not demonstrated that the OCCA unreasonably applied Strickland.

Petitioner alleges that his conflict counsel, Mr. Crites, was deficient because he failed to raise an issue of an insufficient factual basis for the plea. Despite Petitioner's failure to raise this issue before the district court, the OCCA addressed the issue under its plain error standard of review and found that the issue was meritless. As previously found, Petitioner stipulated to the facts presented in the probable cause affidavit and admitted his guilt of each of the offenses. Petitioner has not demonstrated that the OCCA unreasonably applied Strickland in finding that Mr. Crites' performance was not deficient under the circumstances.

Moreover, Petitioner cannot show any prejudice as a result of any omissions or errors by Mr. Crites during the plea withdrawal proceedings. Petitioner is therefore not entitled to habeas relief concerning this claim.

IV. Request for 28 U.S.C. § 2254(e)(2) Evidentiary Hearing

Petitioner has requested an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2) "on his . . . Sixth Amendment claim of Ineffectiveness of trial counsel." Motion for Evidentiary Hearing on Sixth Amendment Claims (Doc. # 2).

Where a habeas litigant "has failed to develop the factual basis of a claim in State court proceedings," a federal court may grant a request for an evidentiary hearing only if the litigant's claims rely on either "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," or "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(I)-(ii). Additionally, the litigant must show that "the facts underlying the claim[s] would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." Id. § 2254(e)(2)(B).

Petitioner contends that he was unable to develop the facts at an evidentiary hearing in the state courts because his request for an evidentiary hearing was denied by the OCCA. Petitioner received two hearings on his requests to withdraw his guilty plea, and he asserted ineffective assistance of counsel at both of those hearings. He also asserted a claim of ineffective assistance of counsel in his certiorari appeal, and the OCCA rejected the claim

on its merits in light of the extensive record of the plea and plea withdrawal hearings that had been made in the state district court. Petitioner has failed to identify any facts he believes a § 2254(e)(2) evidentiary hearing would prove or how that evidence could establish by clear and convincing evidence that, but for a constitutional error, no reasonable factfinder would have found him guilty of the charged offenses to which he admitted his guilt. Petitioner's application for an evidentiary hearing on his Sixth Amendment claims in ground five of the Petition should be denied.

RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED and that Petitioner's request for an evidentiary hearing on his Sixth Amendment claims in ground five be DENIED. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by ___January 12th___, 2016, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed

herein is denied.

ENTERED this ____23rd____ day of ___December___, 2015.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE